UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALBERT MILLSAPP, | ) | |
| | ) | 10 CV 6048 |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Magistrate Judge Young B. Kim |
| DANIEL MORECI, *Superintendent of* | ) | |
| *the Cook County Jail, et al.*, | ) | |
| | ) | September 19, 2011 |
| Defendant. | ) | |

**MEMORANDUM OPINION and ORDER**

Pre-trial detainee Albert Millsapp brought this action under 42 U.S.C. § 1983 against the unidentified director of the Cook County Jail and Daniel Moreci, who is the superintendent of the division of the jail where Millsapp is housed. Millsapp alleges that the defendants violated his rights under the Eighth and Fourteenth Amendments by subjecting him to incessant loud noise in his cell during four months of his confinement. Currently before this court is Moreci's motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the motion is denied.

**Background**

This court takes as true the facts in Millsapp's pro se complaint and views those facts in the light most favorable to Millsapp. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). According to his complaint, throughout his confinement at the Cook County Jail, Millsapp has been confined to his cell for 22 to 23 hours per day. (R. 6, Compl. ¶¶ 15, 18.) Because his cell is made from concrete and metal, noises generated outside and within

his cell are amplified. (Id. ¶ 18.) From late March to late July 2010, the sink in Millsapp's cell ran incessantly. (Id. ¶¶ 19, 29.) According to Millsapp, "[t]he deep howling, vibrating sound of the water radiated through the cell relentlessly pounding in his ears . . . . The sound is best described by if one were to submerge his own head in water and then beat the water with objects without ceasing." (Id. ¶¶ 19-20.) Millsapp claims that the noise was the equivalent of "water torture," causing him to suffer dizziness, vomiting, constant headaches, loss of appetite, weight loss, and suicidal thoughts. (Id. ¶¶ 24-25, 27-28.) Even after the sink was finally fixed, Millsapp continues to suffer from headaches and tinnitus, as well as depression and anxiety stemming from his fear that the noise of the running water could return at any time. (Id. ¶¶ 29-33.)

Millsapp alleges that over the course of the four months in which his sink never stopped running, he filed multiple grievances with several shift sergeants and Moreci requesting that they fix the sink or transfer him to another cell. (Id. ¶¶ 8, 21, 26.) His grievances were ignored. (Id. ¶ 21.) In May 2010 Millsapp's family members called Moreci to convey Millsapp's complaints and to ask him to fix the running sink. (Id. ¶ 25.) In response correctional officers told Millsapp to "bond out or plead guilty and go to prison and you won't have to hear the water any more." (Id.) The next month, Moreci "was on the deck and laughed at" Millsapp, but Millsapp continued to file grievances pleading for an end to the noise. (Id. ¶ 26.)

On September 22, 2010, Millsapp brought this suit against Moreci and the unidentified jail director. After the parties consented to the jurisdiction of this court, (R. 10), Moreci filed the current motion to dismiss, (R. 16).

**Analysis**

A defendant is entitled to dismissal if the complaint's allegations are insufficient to state a claim upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6). Although at the dismissal stage all well-pleaded facts are taken as true and reasonable inferences are viewed in a light most favorable to the plaintiff, *McGowan v. Hulick*, 612 F.3d 636, 638 (7th Cir. 2010), the factual allegations must "state a claim for relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, a complaint will survive a motion to dismiss if it gives the defendants "fair notice of what . . . the claim is and the grounds upon which it rests," and if it includes allegations that are "enough to raise a right to relief above the speculative level." *Id.* at 555 (internal quotation omitted). In reviewing the current motion, this court bears in mind that pro se complaints are held to a less stringent standard of pleading. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Moreci argues that Millsapp's allegations are insufficient to establish either that he was subject to conditions amounting to cruel and unusual punishment or that Moreci was deliberately indifferent to those conditions. "The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment," which prohibits the "cruel and unusual" punishment of a prisoner. *Helling v.*

3

*McKinney*, 509 U.S. 25, 31 (1993). The Eighth Amendment protects prisoners by imposing a duty on prison officials to provide "humane conditions of confinement." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). This constitutional protection is extended to pre-trial detainees through the Due Process Clause of the Fourteenth Amendment, *Zentmyer v. Kendall County*, 220 F.3d 805, 810 (7th Cir. 2000), and "'the due process rights of a pre-trial detainee are at least as great as the Eighth Amendment protection available to a convicted prisoner,'" *Higgins v. Correctional Med. Services of Ill. Inc.*, 178 F.3d 508, 511 (7th Cir. 1999)(quoting *Estate of Cole by Pardue v. Fromm,* 94 F.3d 254, 259 (7th Cir. 1996)).

A pretrial detainee's claim challenging the conditions of his confinement must meet two requirements. *Helling*, 509 U.S. at 35. The first is objective—the court asks whether the deprivation alleged is "sufficiently serious." *Sanders v. Sheahan*, 198 F.3d 626, 628 (7th Cir. 1999). The second is subjective—the detainee must allege that the prison official knew about and acted with "deliberate indifference" to the complained-of condition. *Id.* The objective and subjective components of a § 1983 claim are not static, but are subject to the evolving standards of contemporary society. *Ropper v. Simmons*, 543 U.S. 551, 561 (2005).

Whether Millsapp's allegations are sufficiently serious to meet the objective Eighth Amendment criteria is a close question. On the one hand, as a practical matter, it is difficult to understand how the sound of running water, even if constant, could be so loud that it presents the kind of "extreme deprivation" that is "required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Millsap claims in his

4

response that the sound was so loud he and "his cell mate had to yell over the roaring water sound just to be able to communicate." (R. 29 at 1.) On the other hand, the Seventh Circuit and other courts have acknowledged that incessant loud noise in a prisoner's cell can satisfy the objective criteria. *See Sanders*, 198 F.3d at 628; *Antonelli v. Sheahan*, 81 F.3d 1422, 1433 (7th Cir. 1996); *Keenan v. Hall*, 83 F.3d 1083, 1090 (9th Cir. 1996); *Phelps v. United States Bureau of Prisons*, 62 F.3d 1020, 1023-4 (8th Cir. 1995). Although it is true that sporadic loud noise over the course of a few days may not rise to the level of a constitutional violation, *see Lunsford v. Bennett*, 17 F.3d 1574, 1577, 1580 (7th Cir. 1994), here Millsapp alleges that the noise in his cell consisted of an intolerably loud and relentless roaring sound that lasted over the course of a four-month period. (R. 6, Compl. ¶¶ 19, 24, 29.) And Millsapp benefits at this stage in the litigation from the rule that the court must interpret his complaint less stringently than it would the allegations drafted by a lawyer. *See Antonelli*, 81 F.3d at 1428. At the summary-judgment stage, Millsapp will have to come forward with evidence supporting his allegations that the amplified noise from his sink was so loud that it created an objectively inhumane condition in his cell.

With respect to the subjective, deliberate-indifference component, Millsapp alleges that Moreci and the director of the Cook County jail knew about the noise in his cell and ignored his many complaints. Because the doctrine of *respondeat superior* does not apply to claims brought under § 1983, Millsapp must allege that the defendants "caused or participated in the alleged constitutional deprivation." *See Zimmerman v. Tribble*, 226 F.3d

5

568, 574 (7th Cir. 2000) (quotation omitted). "It is not enough that the defendant 'should have known' of the risk" to the detainee's health or safety; rather, the complaint must allege that he knew of the risk and consciously disregarded it. *See Higgins*, 178 F.3d at 511. This requirement means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Moreci argues that Millsap's complaint insufficiently alleges that he knew of and disregarded the alleged risk to his health and safety stemming from the noise in his cell. Relying heavily on the unpublished, nonprecedential case of *Robinson v. Welborn*, 107 F.3d 873, 1997 WL 58868, at *2 (7th Cir. Feb. 6, 1997), Moreci argues that Millsap's letter-writing campaign "is insufficient to confer knowledge" of the allegedly inhumane conditions in his cell. (R. 16, Def"s. Mot. at 5.) The *Robinson* case involved a motion for summary judgment based on evidence, in the form of affidavits, showing that the defendant warden and assistant warden had no personal knowledge of the prisoner's complaints or direct involvement in the complained-of omissions. 1997 WL 58868, at *2. Although there was evidence that the plaintiff had sent the defendants letters notifying them of his complaints, the evidence showed that neither defendant had personal responsibility for the conditions in his cell. *Id.* Under those circumstances, the Seventh Circuit decided that simply notifying the defendants via letter of the complaints was insufficient to bring the defendants "into the zone of liability" where they were "not otherwise responsible for allegedly unconstitutional

conditions." *Id.* But *Robinson*'s application is limited here, where, given the procedural posture of this case, the court is required to accept Millsapp's allegations. Giving his complaint the liberal construction it is due, Millsapp has alleged not just that he made Moreci aware of the noise in his cell, but that Moreci was responsible for correcting the condition. (R. 6, Compl. ¶¶ 21-22, 25-26, 36.)

Notwithstanding the *Robinson* decision, the Seventh Circuit "allows the possibility that an inmate's letters to prison administrators may establish a basis for § 1983 liability," so long as "the communication, in its content and manner of transmission, gave the prison official sufficient notice to alert him" to the complained-of risk. *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996). Here Millsapp not only alleges that he wrote Moreci letters begging to have his sink fixed or to be housed in a different cell, he also alleges that his family members called Moreci and repeated those pleas. (R. 6, Compl. ¶¶ 21, 25.) According to his complaint, shortly after his family placed their calls Moreci was in Millsap's unit and laughed at him—the implication being that Moreci was mocking Millsap's complaints. (Id. ¶ 26.) Taken together, these allegations are sufficient to show that Moreci knew about the noise in Millsap's cell and disregarded the alleged risk that condition caused to Moreci's health. *See Farmer*, 511 U.S. at 837.

**Conclusion**

Because this court concludes that Millsapp's allegations are adequate to meet both the objective and the subjective criteria of his Eighth Amendment claim, the motion to dismiss is denied.

        **ENTER:**

        _____
        **Young B. Kim**
        **United States Magistrate Judge**